STATE v. LORENZO McMILLAN ET AL.

(Filed 24 December, 1920.)

**Intoxicating Liquor—Spirituous Liquor—Manufacture—Common Benefit —Circumstantial Evidence.**

A conviction of several defendants upon wholly circumstantial evidence tending to show that they had a common purpose in illicit distilling spirituous liquor in a close neighborhood to each other, upon adjoining premises, and receiving a common benefit, may be had, as in this case,

where there was evidence that they had moved stills from one place to the other on their lands, to conceal their operations, used the still slops for the feeding of their. hogs, with other circumstantial evidence tending to show the joint and unlawful manufacture of the liquor, and identifying them therewith.

APPEAL by defendants from *Finley, J.,* at April Term, 1920, of SCOTLAND.

The defendants, four brothers, were convicted of manufacturing liquor, and from the judgment upon such conviction they appealed to this Court.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*
*Walter H. Neal for defendants.*

WALKER, J. The jury might very well have acquitted the defendants, but as it did not, the main question on this appeal is whether or not there is any evidence which justified such conviction. That evidence is wholly circumstantial, but, from the nature of such offenses, that quite frequently is the only evidence available, but sometimes it is of so strong a character as to be really more convincing than any other kind. We have affirmed convictions for this class of offenses where the testimony was not as strong as that we find in this record. *S. v. Horner,* 174 N. C., 788; *S. v. Carroll,* 176 N. C., 730; *S. v. Bush,* 177 N. C., 551.

The following circumstances, among others, tend to show defendant's guilt:

1. They all lived between two creeks, three of them on the same land and one on the adjoining tract, their houses being about a quarter of a mile apart: first, Charles' home, then Elijah's, then Jesse's, then Lorenzo's.

2. Within forty-five steps of Charles' home the officers found a complete still and beer ready to still. The path led from the still to the hog lot, and the hogs had been fed still slops. There was a pool from which water was obtained for the still nearby.

3. At Elijah's, a quarter of a mile off, they found that his hogs had been fed still slops; steps leading from the hog lot to two barrels of beer, hid in the woods, one right above and the other right below. There were paths leading from the still site to the house. "The paths all led back to the house, and there were fresh tracks coming and going." Plain path from Elijah's house to still.

4. At Jesse's they found a still site in a swamp near by, and there were still sites up and down the creek with paths leading between them. At

the still site near Jesse's they found jars, bottles, and things of that sort, and about a half barrel of beer.

5. At Lorenzo's they found a place where whiskey had been made, about 131 steps from his house, fresh signs which showed that liquor had been made within three or four days, signs of beer which had been emptied in a pit, and it could be smelled some distance.

L. P. Smith, for the State, said: "We would go there and find where a still was, and maybe inside of another week we would find it in another place. On one occasion when I went over there I found two men at the still between Elijah's and Lorenzo's house. We found two men operating, and they ran. One of them looked like it was Lorenzo, and he had on an army hat like I had seen him wear. I never have seen him wear it since, because I had it."

This is not only some evidence of all the defendants' guilt, but also of a common purpose and enterprise in which they were engaged.. If this proposition is correct, then both questions were for the jury, and it has determined both adversely to the defendants.

The defendants each went upon the stand and testified in his own behalf. They also introduced evidence of their good character. The State, in rebuttal, introduced a number of witnesses who testified that their characters were bad for making whiskey. They having put their character, as parties, in issue, this is a circumstance which amounts to substantive evidence against them. *S. v. Atwood,* 176 N. C., 704; *S. v. Butler,* 177 N. C., 585.

While there is no very positive or direct evidence to show a conspiracy to manufacture liquor, or a joint manufacture of the same, which is more accurate, there are circumstances from which the jury could reasonably infer that such was the purpose of these defendants. They evidently understood by secret or tacit agreement among themselves that they should derive a joint benefit from the transaction. The evil intent of persons may be concealed in many and various ways, and it would be impossible for the State to expose the particular intent, in any individual case, unless it could resort to circumstantial evidence. This had the appearance of a family affair, a brotherhood of lawbreakers, and it was not an unnatural affiliation, if they were all, as it seems, disposed to do it in that way.

The hogs of all of them were included in the procedure, as they were gathered together at a common trough and were fed with the swill taken from the stills, which were used apparently in this joint enterprise. But this is not so vital a fact as to be essential to a conviction.

It cannot be seriously denied that there was some evidence of the individual guilt of the defendants, but they, each and all of them, do assert that there is no evidence of a combination between them to violate

the law.  We think there is some evidence of concert between them.

The removal or shifting of the stills and equipment from one place on their lands to another, the location and proximity of their homes, the general appearance of the places, and the use to which they put the slops, or swill, and the manner in which they did it.  If all of the circumstances are taken together, as they should be, they tended to show coöperation, or united action, by the defendants sufficient for the jury to pass upon the fact.  The defendants agreed to the consolidation, provided it was tried on the theory of a joint purpose to break the law, and we have considered it that way.

We cannot see why there is much practical difference in a conviction of all the defendants of a joint unlawful dealing in liquor and a separate conviction of each one of them of the same offense, as either is a misdemeanor punishable in the discretion of the court, where the manufacture is the first offense, Consol. Statutes, sec. 3409, but the decision is not put upon this ground, nor need it be.

We have read and carefully considered the able and learned briefs of defendants' counsel, which strongly present their side of the case, but when we weigh the proof, as has been done, we find ourselves unable to say that there is absolutely no evidence of coöperation by these defendants in manufacturing the liquor.

The nonsuit, therefore, was properly refused, and the request for a peremptory instruction to acquit should not have been granted.

No error.